[Cite as *State v. Huddleston*, 2018-Ohio-1114.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 8-17-21

v.

ZACHARIAH HUDDLESTON,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR16-12-0339

Judgment Affirmed

Date of Decision: March 26, 2018

APPEARANCES:

    *Craig M. Jaquith* for Appellant

    *Eric C. Stewart* for Appellee

**ZIMMERMAN, J.**

{¶1} Appellant, Zachariah Huddleston ("Huddleston"), appeals the judgment and sentence of the Logan County Common Pleas Court wherein he was found guilty of one count of Aggravated Robbery; one count of Aggravated Burglary; one count of Murder; and one count of Having Weapons While Under Disability. He was also found guilty of a gun specification pursuant to R.C. 2941.145 relative to Counts One, Two and Three. For the reasons that follow, we affirm the ruling of the trial court.

*Facts and Procedural History*

{¶2} On December 6, 2016, Huddleston was indicted by the Logan County Grand Jury on three charges, Aggravated Robbery, Aggravated Burglary and Murder. However, a superseding indictment was filed in Logan County on April 11, 2017 charging Huddleston with: Count One, Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; Count Two, Aggravated Burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree; Count Three, Murder, in violation of R.C. 2903.02(B), an unclassified felony; Count Four, Having Weapons While Under Disability, in violation of 2923.13(A)(3), a felony of the fourth degree; and Count Five, Tampering with Evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. Firearm Specifications, in violation of R.C. 2941.145, were also contained in Counts One, Two and Three. The charges stem from the November 24, 2016 burglary, robbery and murder of Jeffrey

Brentlinger ("Brentlinger") in Logan County, Ohio.  Huddleston pled not guilty to all charges.

{¶3} On July 25, 2017 the case proceeded to a three-day jury trial.  At trial the State called sixteen (16) witnesses.  After the State rested its case in chief, Huddleston made a Crim.R. 29 motion to the trial court arguing that all charges against him should be dismissed due to the State's failure to prove its case.  The trial court granted the motion as to count five only.  Thereafter, Huddleston did not present a defense.

{¶4} Ultimately, the jury found Huddleston guilty of Aggravated Robbery, Aggravated Burglary, Murder, Having Weapons While Under Disability and the firearm specification.  However, the trial court merged the aggravated robbery and aggravated burglary convictions (counts one and two) into the murder conviction (count three) and sentenced Huddleston to 15 years to life on the murder conviction, consecutive to a three-year sentence on the weapons charge and to a three-year sentence on the gun specification, for a total sentence of 21 years to life.  (Doc. 155).  It is from this judgment that Huddleston appeals, asserting the following assignments of error for our review.

ASSIGNMENT OF ERROR NO. I

**Mr. Huddleston's trial counsel rendered ineffective assistance of counsel, in violation of his constitutional rights.  Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  (Tr. 385, 394,**

**401, 410-411, 416, 448, 450, 452-453, 460, 463, 464, 524; State's Ex. 13.)**

### ASSIGNMENT OF ERROR NO. II

**The trial court erred in allowing irrelevant, prejudicial evidence, disregarding *State v. Creech*, and issuing an erroneous, confusing jury instruction. Fifth Amendment, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Evid.R. 401 and 402; *State v. Creech*, Slip Op. 2016-Ohio-8440. (Tr. 385, 394, 401, 410-411, 416, 448, 450, 452-453, 460, 463, 464, 524; State's Ex. 13.)**

*First Assignment of Error*

{¶5} In his first assignment of error, Huddleston claims that his trial counsel rendered ineffective assistance of counsel: for failing to seek a stipulation to his prior conviction as to the weapons disability charge; for failing to seek redaction of irrelevant, prejudicial portions of his recorded statements; and for failing to object to incorrect, confusing jury instructions.

*Standard of Review*

{¶6} To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient *and* that counsel's deficient performance prejudiced him. *State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, 2016 WL 2957049, ¶ 11, (emphasis added), citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 133, citing, *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697,

104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Analysis*

Stipulation of Prior Conviction

{¶7} Here, Huddleston argues that he was denied effective assistance of counsel because his trial counsel should have stipulated to his prior conviction. Specifically, Huddleston claims that because his trial counsel failed to offer a stipulation to his prior conviction that placed him under a legal disability, the jury learned of his disability during trial which thereby resulted in the ineffective assistance of counsel. We disagree.

{¶8} In our review of the record, we find the only reference to Huddleston's prior conviction (that placed him under a legal disability) occurred during the testimony of Det. Brugler of the Logan County Sheriff's Department. During that testimony, Det. Brugler identified a 2012 judgment entry from the Auglaize County Common Pleas Court (purportedly) convicting Huddleston of a crime that prohibited him from possessing a firearm. Det. Brugler read from the entry in open court and testified that Huddleston's date of birth and the last four digits of his (Huddleston's) social security number matched those of the defendant on the judgment entry. (Tr. 419-420). However, on cross examination, Huddleston's trial counsel attempted to raise doubt that Huddleston was the person convicted in

Auglaize County because Det. Brugler was *not* personally present in the Auglaize County courtroom during that case. Further, during cross examination of Det. Brugler, trial counsel pointed out that a *full* social security number was missing from the entry.

{¶9} Even though Huddleston was found guilty on the Having Weapons While Under Disability charge, we find the decision not to stipulate (to the prior conviction) was a strategic trial tactic of counsel that attempted to place doubt in the jury's mind as to whether Huddleston was ever convicted in Auglaize County of a crime that placed him under a disability. As such, strategic trial decisions, even if unsuccessful, generally do not constitute ineffective assistance of counsel. *See State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶10} Because we give deference to strategic trial tactics of counsel, we find nothing in the record supporting Huddleston's argument that his trial counsel's performance was deficient due to the failure to stipulate to this prior conviction. Thus, this first portion of Huddleston's argument is without merit.

### Statements of Defendant

{¶11} Huddleston next argues that he received ineffective assistance of counsel because his trial counsel failed to seek the redaction of "irrelevant statements" made by Huddleston during an interview with Det. Brugler and made during his recorded telephone conversations from the county jail. Relative to this argument, Huddleston directs us to fifteen (15) instances in the trial transcript

wherein he asserts that trial counsel's failure to pursue the redaction of various statements amounted to ineffective assistance of counsel.

{¶12} We note that the majority of Huddleston's statements were made during his telephone conversations with visitors which occurred while he was incarcerated in the Logan County Jail awaiting trial. Only 5 of the complained-of statements were made to Det. Brugler during Huddleston's interview which we will discuss first.

Statements to Det. Brugler

{¶13} Huddleston argues that the below statements (from States Exhibit 12) made to Det. Brugler should not have been played to the jury. The statements, as they appear in the transcript, are as follows:

- "What the fuck am I'm [sic] going to rob somebody for when I can sell a little bit of weed or something?" (Tr. 385). [sic] (Actually Tr. 386).

- "Is Bellefontaine a racist town?" (Tr. 394). [sic] (Actually Tr. 395).

- "[Mr. Brentlinger] was just creepy as hell. Very creepy, man." (Tr. 401). [sic] (Actually 402).

- "I just got out in July, July 24th [2016]." (Tr. 410). [sic] (Actually Tr. 411).

- "I had a job at IPS. . . . I quit. I walked out. . . . Yeah, I walked out. Fuck that." (Tr. 410-411). [sic] (Actually Tr. 411-412).

{¶14} States Exhibit 12 contains the interview video between Huddleston and Det. Brugler and Det. Joseph. That interview commences on page 377 of the

trial transcript. The interview starts with Det. Brugler providing Huddleston with *Miranda* warnings. (Tr. 379-380). Thereafter, Det. Brugler advised Huddleston of the potential charges that he faced as a result of the death of Brentlinger. (Tr. 380-381).

{¶15} Next, Det. Brugler reveals to Huddleston some of the prosecution's evidence regarding the murder, verifying to Huddleston that co-defendant (Marquevous Watkins) fired the fatal shot that killed Brentlinger. (Tr. 381-382). Det. Brugler also explains to Huddleston that he has interviewed other individuals involved in the robbery of Mr. Brentlinger. (Tr. 382-383).

{¶16} Det. Brugler then provides Huddleston the opportunity to tell his side of the story, wherein Huddleston mitigates his involvement in Brentlinger's death (*Id.* starting at page 383). During this interplay, Huddleston spells out the plan to "hustle" Brentlinger by using two young girls (co-defendants Jasmine and Tatiana) as bait to rob Brentlinger. (Tr. 383-388). Huddleston denies any involvement in Brentlinger's murder by telling the detectives "what the fuck am I'm [sic] going to rob somebody for when I can sell a little bit of weed or something". (Tr. 386). Huddleston argues that this statement, should have been redacted by counsel.

{¶17} The interview continues with Huddleston admitting to the detectives that he was "drunk, like two days straight", denying that a plan existed to rob Brentlinger, attempting to lessen his involvement in Brentlinger's murder. (Tr. 389). Huddleston further tells the detectives that "I didn't murder nobody". (Tr.

391). Next, Huddleston asks the detectives "is Bellefontaine a racist town", wondering whether Jasmine (his girlfriend and co-defendant) would be treated fairly in court. (Tr. 391-396). This is the second statement that Huddleston suggests should have been redacted by counsel.

{¶18} Thereafter, Huddleston tells the detectives "I don't rob people" and attempts to defend his co-defendants (Tatiana and Jasmine's) involvement (with Brentlinger) by referring to Brentlinger as being "creepy as hell". (Tr. 401-402). This is the third statement that Huddleston argues should have been redacted by counsel.

{¶19} And finally, in relation to the last two statements which Huddleston argues are prejudicial and subject to redaction, Huddleston tells the detectives "I just got out in July, July 24th. I've been on the straight and narrow since then". (Tr. 411). He also tells the detectives that he had been employed but quit that job. (Tr. 411-412).

{¶20} Upon our review of these passages (which Huddleston claims are prejudicial), Huddleston has not shown us how he suffered prejudice from their admission. To the contrary, the first two statements contain evidence of Huddleston's lack of intent to rob or murder Brentlinger. The third statement casts suspicion on the conduct of Brentlinger, and the last two statements show that Huddleston was recently employed. Such evidence, if believed by the jury, was material as to Huddleston's criminal intent in relation to the robbery and murder

charges. More importantly, because these statements provided the jury with possible defenses as to Huddleston's intent and lack of knowledge to the conspiracy in Brentlinger's murder, we find trial counsel's decision *not* to redact them was a strategic trial tactic. Moreover, we find that even if these statements *were* redacted by the trial court, the jury could have arrived at the same verdict based upon Huddleston's confession (to Det. Brugler) and the competent and credible evidence of a conspiracy adduced at trial.

{¶21} Accordingly, applying the *Strickland* test (as to ineffective assistance of counsel), Huddleston has not shown us that he was prejudice by the admission of these statements into evidence.

### Jailhouse Phone Calls

{¶22} Huddleston also argues that trial counsel was ineffective for failing to seek redaction of the following jailhouse telephone statements:

- "I can't get tried in this county. How can they try me in this county? This was a dude that worked at Honda, grew up in this town, 46 years old. All the jury is going to be old white people too that probably went to school with [Mr. Brentlinger]". (Tr. 452-453). [sic] (Actually Tr. 453-454).

- "I'm going to change the venue, man." (Tr. 453). [sic] (Actually Tr. 454).

- "And here goes everybody's statements. I highlighted shit where they lied and made up shit, you know." (Tr. 463). [sic] (Actually Tr. 464).

- "[S]he beat the murder case, obviously. Because a lawyer, they fought for it and all that shit. Well, that's what I need. [Trial

counsel] don't seem like he's going to fight this shit for me." (Tr. 464). [sic] (Actually Tr. 465).

- "If I don't get what I want, I'm firing him. I need a different one to represent me. And conflict of interest, too. How do I know this man don't know this man? It's a small ass town, Bellefontaine." (Tr. 452). [sic] (Actually 453).

- "I need to get my bond lowered. I need to get up out of here." (Tr. 464). [sic] (Actually Tr. 465).

- "[I]f they got [Marquevous Watkins] convicted of it . . . well, they're not going to be – they're not too worried about me." (Tr. 463). [sic] (Actually Tr. 464).

- Father: "Well, what's going to be bad is how many gun charges you got."
  Mr. Huddleston: "I know". (Tr. 450). [sic] (Actually Tr. 451).

- Father: "You were institutionalized."
  Mr. Huddleston: "Huh?"
  Father: "You were institutionalized."
  Mr. Huddleston: "Hell, yeah. All that shit. I got all that shit wrong with me. And fucking, all that mental health shit, too." (Tr. 448). [sic] (Actually Tr. 449).

- Father: "So, your – lawyers already seen the video."
  Mr. Huddleston: "Yeah."
  Father: "What did he say?"
  Mr. Huddleston: "He told my grandmother the dude's charges ain't going to change." (Tr. 460). [sic] (Actually Tr. 461).

{¶23} In our review of these statements, we again determine that Huddleston's trial counsel's strategy was to permit the jury to hear *all* of Huddleston's conversations. Such tactic resulted in the jury receiving *all* of Huddleston's impressions as to: how he was being represented; how unsympathetic of a victim Brentlinger may have been; how difficult it would be for him to get a

-11-

fair trial; and how he had mental health issues. All of these statements occurred *without him (Huddleston) having to testify and be subjected to cross-examination.* As such, all of Huddleston's comments and complaints were received by the jury without cross-examination.

{¶24} Moreover, and similar to our finding as to Huddleston's statements made to Det. Brugler, Huddleston has failed to show us how he was prejudiced by the admission of these statements.

{¶25} Accordingly, the second portion of Huddleston's argument under this assignment of error is without merit.

Jury Instruction on Causation

{¶26} Finally, Huddleston argues that he received ineffective assistance of counsel when his trial counsel failed to object to the jury instruction on "causation". Huddleston argues that the trial court used 'generic' language regarding the causation element of the murder charge instead of tailoring its instruction to the facts of the case. Huddleston claims he was prejudiced because the jury could have found him responsible for Mr. Brentlinger's murder by virtue of his "failure to act", which, he contends, is simply inaccurate.

{¶27} The jury instructions at issue herein are as follows:

**"The State charges that the act or failure to act of the defendant caused Jeffrey Brentlinger's death.**

**Cause is an essential element of the offense. Cause is an act or failure to act, which in the natural - - which in a natural and**

**continuous sequence directly produces the death, and without which it would not have occurred.**

**The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of the events from the act or failure to act.**

**\* \* \***

**The State of Ohio has presented a theory that the defendant acted in complicity with the principle offender in the commission of the murder of Jeffrey Brentlinger.** *A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if he personally performed every act constituting the offense. This is true even if he did not personally perform every act constituting the offense* **and was not physically present at the time the offense was committed.**

**Before you can find the defendant guilty of complicity in the commission of the murder offense, you must find, beyond a reasonable doubt, \* \* \* the defendant, while committing the aggravated burglary or aggravated - - while committing the aggravated robbery or the aggravated burglary, aided or abetted another in committing the aggravated robbery or aggravated burglary, which caused the death of Jeffrey Brentlinger.**

**\* \* \***

**Before you can find the defendant guilty of complicity to aide and abet, you must find, beyond a reasonable doubt, that the defendant supported,** *assisted,* **encourage,** *cooperated with***, advised, or incited the principle offender in the commission of the offense and the defendant shared the criminal intent of the principle offender. Such intent may be inferred from the circumstances surrounding the offense, including, but not limited to \* \* \* conduct before and after the offense was committed."**

**(Emphasis added). (Tr. 525-528).**

**{¶28}** Huddleston's trial counsel did not object to this instruction.

**{¶29}** In our review, we find the trial court's instruction on causation was taken nearly verbatim from the Ohio Jury Instructions. (Id.) Moreover, generally the rule regarding appellate review of jury instructions is that a sole instruction must be viewed within context of the whole set rather than in isolation. *State v. Coe*, 3d Dist. No. 13-97-46, citing *State v. Taylor*, 78 Ohio St.3d 15, 29-30 (1997); *State v. Price*, 60 Ohio St.2d 136, paragraph four of the syllabus. The Supreme Court of Ohio has held that "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel". *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶117.

**{¶30}** As to the evidence adduced at trial, Huddleston admitted (to Det. Brugler) that he stopped at Walmart before leaving Lima to purchase ski masks and duct tape; to entering Brentlinger's home with his gun in hand; and to pointing his gun in the general direction of Brentlinger. (Tr. 390, 393-394). Huddleston also admitted to being aware that his co-defendant also had a gun. While Huddleston argues that he could not be convicted of murder for his *failure to act*, we find *his statements alone* could lead a jury to a finding of guilty of complicity. Thus, even assuming that the trial court's instruction on causation (i.e. "failure to act") was problematic, such instruction is harmless beyond a reasonable doubt, due to competent and credible evidence presented by the State that Huddleston was a part of the conspiracy which resulted in Brentlinger's murder.

{¶31} Moreover, Huddleston has failed to convince us how the jury instruction on causation resulted in confusion to the jury or resulted in actual prejudice under the totality of the evidence presented against him at trial. Thus, we find his argument is without merit.

{¶32} Accordingly, Huddleston's first assignment of error is not well taken and overruled.

*Second Assignment of Error*

{¶33} In his second assignment of error, Huddleston argues that the trial court committed plain error by allowing the jury to hear the irrelevant statements he made in his interview with Det. Brugler and made during jail telephone conversations he had with his father and his grandmother; and by issuing a confusing jury instruction on "causation".

*Standard of Review*

{¶34} Plain error is to used "'with the utmost caution, under exceptional circumstances and only to prevent the manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68. Further, plain error only exists where "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros,* 78 Ohio St.3d 426, 431 (1997).

<u>Stipulation of Prior Conviction</u>

**{¶35}** Here, Huddleston argues that under *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, the trial court erred in allowing the State to introduce into evidence his prior felony conviction. We disagree.

**{¶36}** The facts of this case are clearly distinguishable from those presented in C*reech*. In *Creech*, the Ohio Supreme Court held that the trial court abused its discretion by refusing to permit the defendant to stipulate to his previous conviction to a disabling act. Here, we have the opposite, as no such stipulation request was ever made by Huddleston to the trial court.

**{¶37}** Nevertheless, as we determined in the first assignment of error, trial counsel's decision not to stipulate to Huddleston's prior disabling act was strategic in nature. As such, Huddleston's claim of plain error under the circumstances of this case is without merit.

<u>Statements of Defendant</u>

**{¶38}** Next, Huddleston contends that it was error for the trial court to admit his recorded statements made to Det. Brugler and to his jail visitors. However, Huddleston never objected to any of these recorded statements during trial, therefore waiving all but plain error. *State v. Lott*, 51 Ohio St.3d 160, 167 (1990).

**{¶39}** During trial, the State presented the testimony of Det. Brugler, who testified to the authenticity of Huddleston's voice from the telephone recordings (of

Huddleston) recorded while he was incarcerated at the Logan County Jail. Relative to this argument, Evid.R. 801(D)(2) provides as follows:

> **Admission by party-opponent. The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.**

Pursuant to Evid.R. 801(D)(2), Huddleston's recorded conversations are admissible as statements made by a party opponent, if relevant. As to relevance, the fifteen statements of Huddleston shed light on his involvement in the robbery, burglary and murder of Brentlinger. Further, and as we noted previously, some of Huddleston's statements contain potential defense evidence. In our review of plain error, the admission of Huddleston's recorded statements into evidence did not result in a "manifest miscarriage of justice" under the evidence presented.

<u>Jury Instruction</u>

{¶40} Lastly, Huddleston re-argues that the trial court's jury instruction on "causation" was error. We disagree.

{¶41} At the outset, we note that an abuse of discretion standard normally applies to a review of jury instructions. *State v. Chinn*, 85 Ohio St.3d 548. Huddleston argues that the trial court erroneously issued an instruction on

-17-

"causation" without tailoring the instruction to facts of his case. However, in reviewing the record, we find Huddleston did not object to this instruction at trial and therefore, a plain error analysis applies. Crim.R. 30(A).

{¶42} Huddleston argues that the trial court's causation instruction permitted the jury to convict him even though Brentlinger's death was caused by another person. As referenced above, the trial court's instructions on causation tracked the language used in the Ohio Jury Instructions. Despite Huddleston's argument, the trial court's instructions on causation were a proper statement of the law. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶90. Nevertheless, as previously noted, there was ample evidence in the record from which a reasonable trier of fact could have concluded that Huddleston could have aided and abetted Jasmine and Tatiana in setting forth a plan to rob Brentlinger; and aided and abetted Marquevous Watkins in the burglary and resulting murder (of Brentlinger). Accordingly, Huddleston has not established plain error under this argument.

{¶43} Huddleston's second assignment of error is overruled.

{¶44} Having found no error prejudicial to the appellant herein in the particular assignments of error, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, J. concurs.**

**PRESTON, J. concurs in Judgment Only.**

**/hls**

-18-