[Cite as *State v. Cartlidge*, 2019-Ohio-1283.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO. 13-18-33

      v.

LAMAR L. CARTLIDGE,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 17 CR 0166

**Judgment Affirmed**

Date of Decision:    April 8, 2019

APPEARANCES:

    *Jennifer L. Kahler* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Lamar L. Cartlidge ("Cartlidge"), appeals the September 13, 2018 judgment entry of sentence of the Seneca County Court of Common Pleas finding him guilty of: Count One, aggravated trafficking in drugs; Count Two, trafficking in cocaine; Count Three, failure to comply with an order or signal of a police officer; Count Four, tampering with evidence; Count Five, possession of cocaine; Count Six aggravated trafficking in drugs; and Count Seven, aggravated possession of drugs.

{¶2} On appeal, Cartlidge asserts that: 1) the prosecution breached the plea agreement thereby denying Cartlidge due process of law, 2) the trial court erred in ordering Cartlidge to serve consecutive sentences, 3) Cartlidge was denied the effective assistance of counsel when he failed to file a motion to withdraw his guilty plea and failed to request a continuance to file said motion, and 4) the trial court erred by not merging allied offenses of similar import for the purposes of sentencing. For the reasons that follow, we affirm the judgment of the trial court.

{¶3} On November 8, 2017 and later in a superceding indictment, Cartlidge was indicted by the Seneca County Grand Jury on seven counts: Count One, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(a), a fourth-degree felony; Count Two, trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), a fifth-degree felony; Count Three, failure to comply with

the order or signal of a police officer in violation of R.C. 2921.331(B), (C)(5)(a)(ii), a third-degree felony; Count Four, tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony; Count Five, possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony; Count Six, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), (C)(1)(a), a fourth-degree felony; and Count Seven, aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), a fifth-degree felony. (Doc. No. 2, 44). Counts Three through Seven arose from the arrest warrant of Cartlidge on September 6, 2017 for his offense set forth in Count Two. (PSI).

{¶4} On November 17, 2017, Cartlidge appeared for his initial arraignment without counsel. (Doc. No. 6). On November 30, 2017, Cartlidge appeared for his re-scheduled arraignment together with court appointed counsel. (Doc. No. 9). At that hearing, the trial court entered a plea of not guilty (for Cartlidge), and the matter was scheduled a pre-trial conference. (*Id.*).

{¶5} However, on March 16, 2018, Ronnie L. Wingate ("Wingate"), entered his appearance as counsel of record on behalf of Cartlidge. Wingate filed a demand for discovery pursuant Ohio Criminal Rule 16 and a motion for bill of particulars (Doc. No. 15, 16). Thereafter, Cartlidge's court appointed counsel was granted leave of court to withdraw on the basis that Cartlidge had privately retained Wingate. (Doc. No. 17, 19).

{¶6} On May 30, 2018, the State filed a superceding indictment against Cartlidge with a summons requiring Cartlidge to appear for arraignment on June 11, 2018. (Doc. No. 44, 45). However, prior to his arraignment and while out on bond, Cartlidge was arrested for complicity to possess cocaine, a fifth-degree felony, which the State alleged was committed on or about May 30, 2018. (Doc. No. 48). Thus, on June 13, 2018, the State requested revocation of Cartlidge's bond. On June 19, 2018, Cartlidge was arraigned on the superceding indictment and issues related to the bond revocation were addressed. (Doc. Nos. 52, 53).

{¶7} Ultimately, on August 3, 2018, Cartlidge withdrew his pleas of not guilty and pled guilty to all counts in the superceding indictment. (Doc. No. 58). The trial court accepted Cartlidge's guilty pleas, found him guilty, referred the matter for the preparation of a presentence investigation report ("PSI") and scheduled the matter for a sentencing and a forfeiture hearing on September 12, 2018.[1] (Doc. No. 58).

{¶8} On October 3, 2018, the trial court sentenced Cartlidge to: 18 months in prison on Count One; 12 months in prison on Count Two; 36 months in prison on Count Three; 36 months in prison on Count Four; 12 month of prison on Count Five; 18 months in prison on County Six; and to 12 months in prison on Count Seven of the indictment. (Doc. No. 61). The trial court further ordered Cartlidge to

---

[1] We were not provided with a transcript from the change of plea hearing conducted on August 3, 2018.

serve the stated terms consecutively for an aggregate term of 144 months in prison. (*Id.*). The trial court also denied Appellant's request to merge Count Six and Count Seven of the indictment. (*Id.*). Lastly, the trial court ordered Cartlidge's terms to run consecutive to the balance of his post release control days.[2] (*Id.*).

{¶9} On October 9, 2018, Cartlidge filed a notice of appeal and raises four assignments of error for our review. (Doc. No. 65).

### Assignment of Error No. I

**The sentence should be reversed and remanded because the prosecution breached the plea agreement, thereby, denying appellant due process of law as guaranteed to him by both the United States' Constitution and Ohio Constitution and was plain error**

{¶10} In his first assignment of error, Cartlidge argues that his due process rights were violated when the State breached the plea agreement. Specifically, in the negotiated plea agreement, the State agreed "to argue for a total stated prison term of no more than six (6) years…" (Doc. No. 67). Nevertheless, Cartlidge failed to raise this issue at sentencing. Accordingly, Cartlidge's failure to object at sentencing results in a waiver of any error related to the State's breach of its agreement under the plea agreement except for plain error. *See State v. Simmons*, 3d Dist. Allen No. 1-14-45, 2015-Ohio-1594, citing *State v. Sexton*, 3d Dist. Union No. 14-13-25, 2015-Ohio-934, ¶ 85 (the defendant's failure to object to alleged

---

[2] Cartlidge had a balance of 1280 post release control days.

errors at sentencing resulted in forfeiture of the errors on appeal subject to the plain error exception only); *State v. Hartley,* 3d Dist. Hancock No. 5-14-04, 2014-Ohio-4536, ¶ 9 (failure to object to the alleged breach of the plea agreement in the trial court resulted in forfeiture of "all but plain error on appeal"), citing *State v. McGinnis,* 3d Dist. Van Wert No. 15-08-07, 2008-Ohio-5825, ¶ 8. Thus, plain error guides this Court's review.

*Standard of Review*

**{¶11}** We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894, citing *State v. Landrum*, 53 Ohio St.3d 107, 110, 559 N.E.2d 710 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error review in criminal cases is governed by Crim.R. 52(B). *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894, citing *State v. Risner*, 73 Ohio App.3d 19, 24, 595 N.E.2d 1040 (3d Dist. 1991). For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's

errors. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996), citing *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894 (1990).

*Analysis*

{¶12} It is important to note that Cartlidge did not object to the State's failure to honor its sentencing recommendation. (September 12, 2018 Tr. at 1-28). The plea agreement breach raised by the appellant is that the State agreed to recommend a total of six years in prison for Cartlidge. Regardless, the plea agreement also contained the following language relative to the State's promised recommendation:

> I also understand that if I have been *charged with* having violated or have been found guilty of having violated any law: local, state, or federal *subsequent to accepting* the Sentence Recommendation within this Plea of Guilty *and prior to sentencing*…the Prosecutor is released from and will not be required to make the Recommendation at sentencing. That decision will be left solely to the discretion of the Prosecuting Attorney.

(Emphasis added.)[3] (Doc. No. 57).

{¶13} The record reveals that Cartlidge committed a new offense on May 30, 2018, while out on bond for the original indictment. (Doc. No. 48). Cartlidge was arrested on June 11, 2018, the day of his arraignment, on the superceding indictment for the May 30th offense. (Doc. No. 45, 48). Additionally, the record reveals that Cartlidge was arrested on a second felony drug charge (while out on bond here) on

---

[3] The plea agreement is silent as to the May 30th offense. The plain language of the plea agreement suggests the May 30th offense was contemplated at the time of Cartlidge's plea on August 3rd.

September 12, 2018, the morning of his sentencing hearing in this case. (September 12, 2018 Tr. at 13).

{¶14} Cartlidge asserts that the State failed to abide by the terms of the plea agreement, but fails to address how his being "charged with" committing new criminal offenses while on bond impacts his plea agreement with the State. To us, Cartlidge's new charges filed prior to sentencing released the State from its plea recommendation contained in the agreement.

{¶15} Accordingly, Cartlidge has failed to meet his burden to demonstrate plain error that the trial court deviated from a legal rule, an obvious defect in the proceeding. Moreover, Cartlidge also has failed to establish how his substantial rights were affected. We can find no manifest miscarriage of justice apparent from the record as a result of the alleged errors. Cartlidge's sentence falls within the statutory limit; it was appropriate, given his prior criminal record and his newly-charged criminal activity committed while out on bond, awaiting sentencing for the instant case; and it is supported by the principles and purposes of sentencing in R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, which the trial court expressly cited in the its judgment entry.

{¶16} For the foregoing reasons, we overrule Cartlidge's first assignment of error.

**Assignment of Error No. II**

**Appellant's maximum consecutive sentences is (sic) cruel and unusual punishment when the trial court considered defendant's arrest and 2013 photos when sentencing**

*Standard of Review*

{¶17} Next, the appellant argues that the maximum, consecutive sentences imposed by the trial court violated his Eighth Amendment rights under the United States Constitution. We disagree.

{¶18} In *State v. Anderson*, 151 Ohio St.3d 212, 2017-Ohio-5656, ¶ 27, the Supreme Court of Ohio recognized:

> The Eighth Amendment of the United States Constitution precludes cruel and unusual punishment is the 'precept of justice that punishment for the crime should be graduated and proportioned to [the] offense.' " [Brackets sic.] *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, ¶ 31, quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). To constitute cruel and unusual punishment, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964).

*State v. Lucious*, 3d. Dist. Logan No. 8-18-31, 2019-Ohio-741, ¶ 24.

*Analysis*

{¶19} Cartlidge argues that the trial court based its decision to impose maximum, consecutive sentences upon Cartlidge's arrest on September 12th and the 2013 exhibits presented at the sentencing hearing. (Appellant's Brief at 15). To the contrary, the record supports that the trial court considered the PSI, the oral

arguments, the principles and purposes of sentencing (under R.C. 2929.11), and balanced the seriousness and recidivism factors (under R.C. 2929.12) prior to imposing sentence. (September 12, 2018 Tr. 22-23). Here, the maximum terms imposed were within the statutory range, and the record demonstrates that the trial court made the statutorily required findings regarding the imposition of consecutive sentences. Cartlidge's counsel of record highlighted Cartlidge's prior conviction for robbery and his conviction for drug offenses in 2013. (*Id*. at 8). The State emphasized that Cartlidge committed new offenses while out on bond for the instant offense; that Cartlidge had been convicted of fourteen drug-related offenses, eleven of which were felonies; and that Cartlidge had significant criminal history. (*Id*. at 13-14).

**{¶20}** Based upon the record before us, the trial court engaged in a clear analysis of all the evidence presented at the sentencing hearing. Thus, upon our review of the record, we cannot conclude that the trial court's sentence was so grossly disproportionate to the offenses committed that it would "shock the sense of justice of the community." Accordingly, Cartlidge's second assignment of error is overruled in its entirety.

## Assignment of Error No. III

**Appellant was not provided effective assistance of counsel when appellant's attorney failed to motion the court to withdraw defendant's plea and failed to ask for a continuance to allow defendant file a motion to withdraw his plea**

*Standard of Review*

**{¶21}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient *and* that counsel's deficient performance prejudiced him." *State v. Huddleston*, 3d. Dist. Logan No. 8-17-21, 2018-Ohio-1114, 2018 WL 1468739, ¶ 6, citing *State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, 2016 WL 2957049, ¶ 11, (emphasis added), citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 133, citing, *\*587 Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The failure to make either showing defeats a claim of ineffective assistance of counsel." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Analysis*

**{¶22}** Here, Cartlidge argues that he was denied effective assistance of counsel because his trial counsel should have objected to the State's breach of the plea agreement at the sentencing hearing. Appellant argues that Wingate should have "upon *receiving notice* that the State intended to back out of the plea agreement and argue for the maximum, consecutive sentences…" moved the trial court

pursuant to Ohio's criminal rules to withdraw Cartlidge's guilty pleas. (Emphasis added.) (Appellant's Brief at 16).

{¶23} As we have noted herein before, Cartlidge's conduct prior to sentencing (i.e., arrest on new charges) released the State from its sentencing recommendation contained in the plea agreement. Based upon Cartlidge's new charges the State recommended that the trial court impose maximum, consecutive sentences at the sentencing hearing. The record is void as to whether Appellant's counsel had received advanced notice of the State's decision prior to the sentencing hearing. (September 12, 2018 Tr. 1-28). Even if such were the case, despite Cartlidge's new criminal charges, Appellant's counsel made a strategic decision to proceed with sentencing, begging for the trial court's leniency. He had no opposition from his client on this strategy.

{¶24} Moreover, Cartlidge in his statements to the trial court at sentencing, acknowledged responsibility for his criminal activity and requested leniency which to us suggests a coordinated plan of attack. (*Id*. at 6-7). There is no indication in the record that Cartlidge wanted to test the State's cases against him.

{¶25} Accordingly, there is nothing deficient in counsel's performance under the facts presented. Accordingly, Cartlidge's third assignment of error is overruled.

**Assignment of Error No. IV**

**The trial court erred by not merging allied offenses for purposes of sentencing**

*Standard of Review*

**{¶26}** "'A defendant bears the burden of proving that the offenses for which he has been convicted and sentenced constitute allied offenses of similar import.'" *State v. Vanausdal,* 3rd Dist. Shelby No. 17-16-06, 2016-Ohio-7735, ¶ 17, quoting *State v. Campbell,* 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409, ¶ 18, citing *State v. Luong,* 12th Dist. Butler No. CA2011-06-110, 2012-Ohio-4520, ¶ 46. Additionally, a reviewing court may look to the information contained in the record to make its allied offense determination. *Id.* "Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo." *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894; *see also State v. Ruff*, 143 Ohio St.3d 114, 2013-Ohio-1441.

*Analysis*

**{¶27}** The Double Jeopardy Clause "protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The Double Jeopardy Clause's third protection is codified in the Ohio Revised Code in section 2941.25, which prohibits multiple punishments

for the same offense by prohibiting multiple convictions for "allied offenses of similar import" arising out of the same conduct.

{¶28} R.C. 2941.25, Ohio's multiple-count statute, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶29} The Supreme Court directs us to apply a three-part test to determine whether a defendant can be convicted of multiple offenses:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 12 and citing *Ruff* at paragraphs one, two, and three of the syllabus.

{¶30} Applying the allied-offense analysis, we conclude that Cartlidge's convictions for aggravated trafficking in drugs and aggravated possession of drugs are not allied offenses of similar import. We now address only the dissimilar-import question of the three-part test.

{¶31} "As explained in *Ruff*, offenses are of dissimilar import 'when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.'" *Id.* at ¶ 77, quoting *Ruff* at paragraph two of the syllabus.

> At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial * * * will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts.

*Ruff* at ¶ 26.

{¶32} In the case sub judice, we find that the above listed factors weigh heavily against finding that the Counts Six and Seven are allied offenses of similar import. Both parties noted at the sentencing hearing that the drugs were packaged separately. (September 12, 2018 Tr. 9, 18-19). Count Six involved seven individual bindles of fentanyl packaged for sale.[4] (September 12, 2018 Tr. at 19). Whereas Count Seven, was packaged in bulk.[5] (*Id.*). The crux of Cartlidge's argument is

---

[4] Each bindle contained .26 grams of fentanyl packaged individually for sale. (September 12, 2018 at 19).
[5] The bulk package contained 2.12 grams of fentanyl packaged either for personal use or for sale. (*Id.*).

that the drug packages whether packaged individually or packaged in bulk, contained the same substance. This is not dispositive. The packaging of the seven separate bindles demonstrates the separate animus of preparation for sale with intended sales to, potentially, seven different drug users. Where the single package represents the separate amicus for either personal consumption or for a bulk sale to a purchaser, other than, to those who wish purchase smaller bindles.

{¶33} Notwithstanding the previous point, we were not provided with the change of plea transcript to fully address the facts as they relate to allied offenses. The appellant bears the burden of providing this Court with the record of the facts (the missing transcript) necessary to support Cartlidge's arguments. *See*, *State v Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, 2012 WL 3194139, citing *In re Predmore*, 3d Dist. Logan Nos. 8-09-03, 8-09-04, 8-09-05, 2010-Ohio-1626, citing *State v. West*, 3d. Dist. Auglaize No. 2-06-04, 2006-Ohio-5834, 2006 WL 3159354, citing App.R. 9(B). In the absence of the transcript, this Court is required to presume regularity in the trial court proceedings and affirm. (*Id.*). We conclude, if the presumption of a given set of facts is necessary to determine if the offenses were allied offenses of similar import, we must presume the facts established at the change of plea hearing would have validated, rather than invalidated, the judgment of the trial court. *See State v. Brandon*, 45 Ohio St.3d 85, 543 N.E.2d 501 (1989) citing *Fisher v. Lanning v. Quillen*, 76 Ohio St. 189, 81 N.E. 182 (1907). Based

upon the foregoing, we cannot find that the trial court committed an error is law in failing to merge Counts Six and Seven.

{¶34} For the foregoing reasons, we reject Cartlidge's contention that Count Six and Count Seven are allied offenses of similar import, and we overrule the fourth assignment of error.

*Conclusion*

{¶35} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Cartlidge in the particulars assigned and argued. The judgment of the Common Pleas Court of Seneca County, Ohio is therefore affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**